Case 4:20-cv-04411   Document 135   Filed on 02/28/25 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
February 28, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH SOWELL, <br> TDCJ #01322390, <br><br> Plaintiff, <br> VS. <br><br> JEFFERY RICHARDSON, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 4:20-4411 |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Sowell, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights action. Sowell brings claims related to his medical care and disability. Defendants Michelle Northcutt, R.N., and TDCJ have filed a motion for summary judgment (Dkt. 119), and Sowell has responded (Dkt. 133; Dkt. 134).[1] The motion is ripe for decision. Having reviewed the pleadings, the motions and briefing, the applicable authorities, and all matters of record, summary judgment will be **granted** for Northcutt and TDCJ. Sowell's claims against Captain Paul Hill will be **dismissed without prejudice**. The Court's reasons are explained below.

---

[1] Sowell's motion to oppose summary judgment (Dkt. 134), which the Court construes as a motion for leave to file an additional response, will be granted, and Sowell's arguments in the motion will be considered.

I. **BACKGROUND**

Sowell originally sued seven defendants and complained of events from September through November 2020. *See* Dkt. 26 (amended complaint); Dkt. 50 (more definite statement). The Court granted Sowell leave to file a second supplemental complaint (Dkt. 51) bringing claims about events from August through October 2022. *See* Dkt. 53. After screening his claims, the Court dismissed three defendants and ordered four defendants to answer: Warden Jeffery Richardson; Captain Paul Hill; Michelle Northcutt, RN; and TDCJ (Dkt. 58). The Court later dismissed all claims against Warden Richardson (Dkt. 97). Northcutt and TDCJ then answered (Dkt. 98) and now move for summary judgment on all claims (Dkt. 119). The remaining defendant, Captain Hill, separated from employment with TDCJ on September 30, 2023 (Dkt. 73) and has not been served with process.[2]

Sowell has a high-grade tear of the anterior cruciate ligament (ACL) in his left knee, diagnosed in 2019, and states that the tear causes him excruciating pain when walking, as well as swelling, emotional distress, and mental anguish (Dkt. 50, at 1-2; *see* Dkt. 1-1 & 1-2 (medical records)). He claims that on September 15, 2020, because of his torn ACL, a medical doctor placed a restriction in his record stating that he could not walk over 25 yards (Dkt. 26, at 12). He further claims that, in spite of the restriction, TDCJ officials forced him to walk "exceedingly" in excess of the 25-yard limit, which caused unnecessary pain

---

[2] In February 2024, the United States Marshal Service attempted service at Hill's last-known address, as supplied to the Court by the Office of the Attorney General (Dkt. 73). Service was returned unexecuted with a notation that Hill left the residence in November 2023 (Dkt. 91). Sowell requested that the Marshal Service attempt service again (Dkt. 103; Dkt. 106), but the Court is unaware of any additional addresses for Hill.

and vulnerability to falls (*id.* at 9; Dkt. 50, at 1-2). In support of his claims, he submits numerous sick-call requests (Dkt. 26; Dkt. 29) and grievance records from late 2020 (Dkt. 1-1, at 1-4 (Grievance 2021007195)). The grievance records reflect that, in response to his complaint that officials were not honoring his walking restriction, the warden stated that his restriction applied to his work assignment rather than his housing assignment. Sowell disagrees with the warden's characterization of the restriction, stating that the restriction was "not a work restriction but a medical order" that TDCJ officials failed to honor (Dkt. 50, at 11). The relevant events occurred at the Estelle Unit.

Sowell alleges that Northcutt, a registered nurse, violated his Eighth Amendment rights because she was deliberately indifferent to his severe knee pain. In particular, he claims that Northcutt failed to have him moved or issue a wheelchair. He alleges that her refusal to accommodate the restriction against walking more than 25 yards caused him pain, suffering, distress, and missed activities (Dkt. 50, at 8-9) (discussing events of Sept. 21, 2020; Sept. 27, 2020; Nov. 4, 2020; and Nov. 5, 2020). His supplemental complaint alleges that Northcutt is liable because, although he submitted sick-call requests to the Estelle Unit's medical department in August and September of 2022 complaining of neck and back pain, he did not see a medical doctor or receive pain medication until September 30, 2022 (Dkt. 51, at 2) (discussing sick-call requests submitted on Aug. 25, 2022; Aug. 26, 2020; Sept. 1, 2022; Sept. 20, 2022; and Sept. 27, 2022)).

Sowell alleges that Captain Hill violated his Eighth Amendment rights because, after Sowell showed him his 25-yard walking restriction on September 16, 2020, Hill disregarded the restriction (Dkt. 26, at 12). He claims that Hill failed to have him moved

3 / 19

to a suitable facility to accommodate the restriction and failed to notify other personnel about the restriction, causing him pain, suffering, and missed activities (Dkt. 50, at 6-7).

Sowell alleges that TDCJ violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA), because officials knew about, but failed to accommodate, his ACL tear and his 25-yard walking restriction. He also claims that the lack of accommodation denied him access to services and programs including the library, the day room, and church services, and that officials' actions were discriminatory (*id*. at 4; Dkt. 51, at 3). He seeks only monetary damages for his ADA claim (Dkt. 26, at 18; Dkt. 50, at 12).

The defendants' motion provides background information regarding medical restrictions for TDCJ inmates which, as provided by Policy A-08.4, are assigned when an inmate arrives at TDCJ and later updated by medical providers as needed (Dkt. 119-3 (Policy A-08.4), at 4-5). An attachment to Policy A-08.4 discusses the restrictions that medical personnel may place on an inmate's facility assignment, housing assignment, or work assignment (*id*. at 6-10 (Attachment A)). Facility restrictions include assignments to single-level facilities or those offering extended medical services (*id*. at 6 (Section I)). Housing restrictions include "basic housing" restrictions such as single-cell or special housing assignments, as well as bunk assignments, row assignments, and wheelchair use (*id*. at 6-7 (Section II)). Work restrictions include more than 20 different restrictions, including restrictions to sedentary work, limitations on the number of hours worked, and limitations or climbing or reaching (*id*. at 7-9 (Section III)). As relevant to Sowell's case, these work restrictions include medical "unassignment" for inmates who should be given

no work assignment (*id*. at 8 (Section III(B)(1)) and walking restrictions for inmates who should not exceed a certain number of yards on the job (*id.* (Section III(B)(8)). The policy requires that these restrictions, after being determined by medical personnel, be indicated on a Health Summary for Classification (HSM-18) form for each inmate (*id.* at 3). The HSM-18 form then is used by TDCJ's classification officials to make appropriate facility, housing, and work assignments for the inmate (*id.* at 6).

Policy A-08.4 provides that restrictions for facility, housing, and work "must be based upon orders by a physician, midlevel provider, dentist, or qualified mental health professional" (*id.*).[3] *See* Dkt. 119-4, at 5 (TDCJ Administrative Directive 4.17 states that updates to an inmate's HSM-18 forms are updated, based on an inmate's health status, by "[h]ealth care staff, such as a physician, mid-level practitioner, dentist, or psychologist").

The defendants submit the affidavit of Bobby Vincent, M.D., Regional Medical Director for UTMB CMC Correctional Managed Care (UTMB/CMC) (Dkt. 121-2). Dr. Vincent provides a comprehensive review of Sowell's medical treatment during the relevant period, as well as pertinent medical records. His affidavit states that he reviewed Sowell's medical records from his incarceration in 2005 through August 20, 2024, as well as Sowell's complaint, amended complaint, more definite statement, and supplemental complaint (*id.* at 2). The defendants also submit Sowell's HSM-18 forms reflecting his facility, housing, and work restrictions from 2020 through 2024 (Dkt. 119-5).

---

3   By contrast, disciplinary or treatment-plan restrictions may be based on recommendations of additional providers, including nurses (*id.*).

Dr. Vincent states that, in the fall of 2020, Sowell received medical treatment from Northcutt and others regarding his knee pain and his request for renewed or increased medical restrictions (Dkt. 121-2, at 6-8). Clinic records from September 2020 reflect objective findings that Sowell was ambulatory with a cane, had a brace on his left knee, and had no swelling (*id.* at 6; *see id.* at 219-222 (Exhibit X)). On September 15, 2020, a medical doctor adjusted Sowell's restriction for work assignments, lowering the maximum walking distance to 25 yards for one year (*id.* at 6, 12; *see id.* at 219-222 (Exhibit X)).[4] Sowell's HSM-18 forms for the period from September 15, 2020, through September 15, 2021, reflect no unit restrictions; housing restrictions to lower bunk and ground floor; no wheelchair restrictions; and work restrictions including a 25-yard walking restriction (Dkt. 119-5, at 5-8).[5]

On September 27, 2020, Northcutt examined Sowell in response to an additional sick-call request and noted a full range of motion, normal gait and posture, and that Sowell ambulated without problems (Dkt. 121-2, at 6-7; *id.* at 18-26 (Exhibit AA)). Sowell complained that his current housing assignment was more than 25 yards from the chow hall. The records reflect that, after Northcutt informed him of other housing options

---

[4]   In the records from September 15, 2020, the provider checked boxes for "cuff pass," "bottom bunk/row," "medically unassigned," and "front cell/no walking greater than 25 yards" (*id.* at 221). The records further state, "ADD Section III-8. No Walking > - Yards: 25 # of Days: 365" (*id.*). This notation appears to correspond to Policy A-08.4, Attachment A, Section III(B)(8), which covers restrictions for walking over a certain number of yards on the job (*see* Dkt. 119-3, at 8), and to order a 25-yard walking restriction for 365 days. Dr. Vincent states that that the 25-yard walking restriction was for work only and expired on Sept. 16, 2021 (Dkt. 121-2, at 9, 12).

[5]   The HSM-18 forms reflect work restrictions during the period including "W01" and "W08," which appear to correspond to medical unassignment and walking restrictions under Policy A-08.4, Attachment A, Section III(B)(1) & (8). *See* Dkt. 119-3, at 8.

including inpatient or geriatric housing, Sowell retracted his request for different housing (*id.* at 7; *id.* at 24). Sowell states that these records are inaccurate, that Northcutt did not inform him of those options, and that he did not retract his request (Dkt. 134, at 6).

On October 15, 2020, an x-ray showed no acute fracture or dislocation but a probable ligament rupture (Dkt. 121-2, at 7; *id.* at 27-39 (Exhibit A-B); *id.* at 40-42 (Exhibit A-C)). On October 21, 2020, Sowell submitted a new sick-call request complaining of pain and requesting medication. Northcutt responded the next day, providing him with copies of his passes and restrictions, telling him that ibuprofen was available from the pill window, and advising him of a follow-up appointment at Hospital Galveston two weeks later (*id.* at 7; *id.* at 57-58 (Exhibit A-F)).

On November 4, 2020, Sowell submitted another sick-call request in which he complained of extreme pain caused by walking from his cell to the chow hall, inquired about the 25-yard walking restriction, and asked about his upcoming appointment (*id.* at 7; *id.* at 59-61 (Exhibit A-G)). Northcutt called Sowell to the clinic on November 5, 2020, reiterated that his work restriction was in place, reviewed his current orders, and provided information about his upcoming appointment (*id.* at 7; *id.* at 62-63 (Exhibit A-H)).

On November 23, 2020, Sowell saw a specialist at Hospital Galveston and agreed to undergo reconstructive surgery of his left knee (*id.* at 7; *id.* at 43-52 (Exhibit A-D)). His surgery was scheduled for December 18, 2020, but Sowell did not attend the appointment because of a dispute over his personal hygiene materials (*id.* at 9; *id.* at 66-67 (Exhibit A-J)). Surgery was rescheduled for January 22, 2021, but Sowell again refused the procedure (*id.* at 8; *id.* at 73-76 (Exhibits A-M & A-N)).

Sowell's supplemental complaint alleges that Northcutt again violated his rights in August and September 2022, after he submitted additional sick-call requests for knee pain (Dkt. 51, at 2-3). TDCJ's records reflect that Sowell did not attend scheduled appointments due to unit lockdown or other issues (Dkt. 121-2, at 10; *id.* at 115-117 (Exhibit B-A); *id.* at 118-19 (Exhibit B-B); *id.* at 120-21 (Exhibit B-C)). On September 23, 2022, in response to a renewed sick-call request, Northcutt noted that Sowell had missed several appointments but again rescheduled him (*id.* at 10; *id.* at 122-23 (Exhibit B-D)). On September 30, 2022, a medical provider saw Sowell in the clinic for pain and provided medications and a referral. The records reflect that, when the provider discussed Sowell's failure to attend past therapy appointments, Sowell stated that he had not been informed of the appointments and that he would amend his federal lawsuit (*id.* at 10; *id.* at 124-27 (Exhibit B-E). On October 28, 2022, Sowell again was treated in the clinic for knee pain and was provided with an expedited referral to a specialist, as well as renewed work restrictions (*id.* at 10; *id.* at 128-30 (Exhibit B-F)).

Dr. Vincent states that Sowell's records do not reflect that he ever had knee surgery or any other invasive procedure to correct the ACL tear in his left knee. He avers that specialists at Hospital Galveston had determined on February 28, 2022, that surgery was not the best option for Sowell, but rather that he needed rehabilitation services (*id.* at 10-11). Based on his exhaustive review of the medical records, Dr. Vincent concludes that medical personnel provided Sowell a variety of treatments and therapies for his left knee but that Sowell had refused some treatments, including surgeries, and failed to show for multiple appointments. Regarding Sowell's medical restrictions, Dr. Vincent states that

Sowell's 25-yard walking restriction was a work restriction that did not control his housing assignment and that Sowell's condition did not require a wheelchair at any time (*id.* at 11-12).

Regarding Northcutt, Dr. Vincent explains that, pursuant to Policy A-08.4, Attachment A, a nurse such as Northcutt cannot place a restriction on a patient (*id.* at 11). He opines that Northcutt rendered appropriate care in September and November 2020 when she reviewed his history, assessed his condition, documented his complaints and requests, and issued crutches and a pass. He also states that in August and September 2022, contrary to Sowell's allegation that Northcutt ignored his complaints, she or other providers responded to all of his sick-call requests (*id.* at 13-14). He concludes that Northcutt rendered timely and appropriate care:

> Based upon my education, training and experience as a physician in both the community and correctional settings, I believe that the medical care provided to Mr. Sowell—including all of the care provided by Nurse Northcutt—was appropriate, timely and performed within the standard of care.

(*id.* at 14).

## II.   STANDARD OF REVIEW

### A.   Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment,

the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). A plaintiff's statements may be sufficient to demonstrate a genuine issue of material fact. *See Bourne v. Gunnels*, 921 F.3d 484, 492-93 (5th Cir. 2019). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, "[s]elf-serving affidavits and declarations, like all summary judgment evidence, must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (cleaned up) (citing FED. R. CIV. P. 56(c)(4)).

Finally, Rule 56 does not impose upon a court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### B.   *Pro Se* Filings

In reviewing the pleadings, the court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence

in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *see E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

## III. DISCUSSION

Sowell brings claims against Northcutt and Hill under the Eighth Amendment. His constitutional claim is cognizable under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). He brings claims against TDCJ under the ADA.

### A. Exhaustion of Administrative Remedies

As a preliminary matter, the defendants argue that Sowell did not exhaust his administrative remedies for some of his claims. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850 (2016); *Jones v. Bock*, 549 U.S. 199 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Sowell argues strenuously that he fully exhausted all claims and that some records presented by the defendants are inaccurate (Dkt. 132; Dkt. 134; *see* Dkt. 90; Dkt. 107). The Court does not rely on exhaustion because, for the reasons stated below, Sowell's claims must be dismissed on other grounds. *See Nottingham v. Richardson*, 499 F. App'x 368, 374 (5th Cir. 2012) (citing *Dillon*, 596 F.3d at 271).

B. <u>**Eighth Amendment Claims**</u>

Sowell alleges that Northcutt violated his rights in 2020 and 2022 in connection with his medical care. Because the plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To state a claim under the Eighth Amendment, a plaintiff must allege that the defendant exhibited "deliberate indifference" to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). An inmate can demonstrate a constitutional violation "by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Thompson v. Tex. Dep't of Crim. Just.*, 67 F.4th 275, 280 (5th Cir. 2023) (cleaned up). A plaintiff must show that the defendant was aware of facts from which the inference could be drawn of a substantial risk of serious harm; that the defendant subjectively drew the inference that the risk existed; and that the defendant disregarded the risk. *Cleveland*, 938 F.3d at 676.

Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v.*

*Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). A significant risk that the official "should have perceived but did not" is insufficient for a constitutional violation. *Cleveland*, 938 F.3d at 676. Deliberate indifference is not shown when "medical records indicate that the plaintiff was afforded extensive medical care by prison officials," even when the plaintiff alleges that doctors "refus[ed] to accommodate his requests in the manner he desired." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (cleaned up). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Gobert*, 463 F.3d at 346 n. 24 (cleaned up). Moreover, a delay in medical care can constitute a constitutional violation only if there has been deliberate indifference that results in substantial harm. *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018).

In this case, Sowell alleges that Northcutt acted with deliberate indifference in the fall of 2020 when she disregarded his 25-yard walking restriction and his request for a wheelchair or a different housing assignment, despite her knowledge of his extreme pain and his inability to put pressure on his knee (Dkt. 50, at 8-9; Dkt. 134, at 3-6). He also alleges that she was deliberately indifferent in 2022 because he submitted five sick-call requests to the Estelle medical clinic between August 25 and September 27, 2022, requesting treatment for pain, but was not seen until September 30, 2022 (Dkt. 51, at 2-3).

The medical records, including those submitted by Sowell, demonstrate that Sowell received frequent medical care in September-November 2020 and August-October 2022, including regular care for his left knee. Some of this treatment was rendered by Northcutt, who examined him, assessed his condition, issued crutches, confirmed his medical

restrictions, assisted with medication, and rescheduled and reminded him of his appointments. To the extent Sowell disagrees with the treatment Northcutt provided, or her responses to his sick-call requests, his disagreement is inadequate to demonstrate deliberate indifference where, as here, the records show that he was afforded extensive medical care. *See Brauner*, 793 F.3d at 500; *Gobert*, 463 F.3d at 346 n. 24. Moreover, to the extent Sowell bases his claim on an alleged delay in care, his sick-call requests directed to the Estelle medical department are insufficient to demonstrate a genuine issue of fact regarding Northcutt's deliberate indifference. *See Delaughter*, 909 F.3d at 136. To the contrary, Northcutt and other providers responded to all of Sowell's requests within days (Dkt. 121-2, at 115-23).

Additionally, TDCJ's records show that Sowell had no facility or housing restriction during the relevant period, other than lower bunk and ground floor restrictions, but had a one-year work restriction against walking over 25 yards (Dkt. 121-2, at 6, 12; *id.* at 219-22; Dkt. 119-5, at 5-8). Sowell's bare assertion that the 25-yard restriction was "a medical order" (Dkt. 50, at 11), and thus that Northcutt or others should have applied the restriction to his housing assignment, is conclusory and insufficient to demonstrate a genuine issue of fact given the uncontroverted evidence that the restriction applied to work assignments only. *See Jones*, 678 F.3d at 348. Additionally, to the extent Sowell argues that Northcutt should have ordered a new housing restriction, the summary-judgment reflects that, as a registered nurse, she was not authorized to fulfill such a request. *See* Dkt. 121-2, at 11 (restrictions can be assigned only by a physician or a mid-level provider; nursing staff "cannot place a restriction on a patient").

Summary judgment will be granted for Northcutt.

## C. ADA Claims

Sowell sues TDCJ for failure to accommodate his disability under the ADA. He seeks compensatory damages and has clarified that he does not seek injunctive relief (Dkt. 50, at 12). TDCJ concedes that Sowell's ACL tear is a "qualifying disability" under the statute (Dkt. 119, at 25).

To succeed on a failure-to-accommodate claim, a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). To recover compensatory damages, he must show "intentional discrimination," which requires more than deliberate indifference. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723-24 (5th Cir. 2020); *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

Sowell alleges that TDCJ failed to accommodate his 25-yard walking restriction when officials did not provide him with a wheelchair or a housing assignment that was within 25 yards of the chow hall and other unit locations (Dkt. 133, at 2; Dkt. 134, at 7-9). He claims that the lack of accommodation caused him excruciating pain when walking to receive TDCJ's programs and services, or caused him not to receive the programs and services (Dkt. 133, at 2). He argues that TDCJ was aware of his complaints because of his multiple grievances (Dkt. 134, at 8). However, Sowell's records reflect that his 25-yard walking restriction was for work, not housing, and Sowell does not demonstrate a genuine

issue of material fact as to whether TDCJ officials failed to accommodate any medical restrictions reflected on his HSM-18 forms. To the extent Sowell argues that medical personnel should have authorized additional restrictions for his housing assignments, this argument cannot suffice to show ADA violations by TDCJ.[6] Sowell does not demonstrate a genuine issue of fact as to whether TDCJ failed to make reasonable accommodations for his disability whether intentionally discriminated against him. Summary judgment therefore will be granted for TDCJ and Sowell's claim for compensatory damages will be dismissed.

### D. Captain Hill

Captain Hill, who has separated from TDCJ, has not been served with process. The United States Marshal Service's attempt to serve Hill at his last-known address was unsuccessful, and the unexecuted return of service states that Hill left the residence in November 2023 (Dkt. 91). The Court has no additional information about Hill's location.

Sowell's claims against Captain Hill are similar to his claims against Northcutt and TDCJ. He claims that, after he spoke to Hill regarding his 25-yard walking restriction, Hill did not arrange for Sowell's reassignment to another facility. In other words, his claim

---

[6] As stated above, medical restrictions are ordered by medical personnel, who complete the classification (HSM-18) forms, and are not ordered by TDCJ officials. *See* Dkt. 119-3 (Policy A-08.4); Dkt. 121-2, at 11-12. TDCJ follows and complies with the restrictions listed on an HSM-18 form, but does not authorize medical restrictions. *See Vasquez v. Kwarteng*, No. 2:20-CV-00098, 2022 WL 20209909, at *13 (S.D. Tex. Aug. 24, 2022) ("while TDCJ is responsible for housing inmates in accordance with any medical restriction, TDCJ is not responsible for authorizing the health-related [restriction] in the first place"); *Buchanan v. Harris*, No. CV H-19-4571, 2023 WL 2504764, at *12 (S.D. Tex. Mar. 13, 2023), *aff'd,* No. 23-20128, 2024 WL 1927651 (5th Cir. May 2, 2024) (correctional personnel are entitled to rely on medical providers).

against Captain Hill is based on his allegation that his 25-yard walking restriction should have been applied to his housing or facility assignments, in addition to his work assignment. *See* Dkt. 26, at 12-13; Dkt. 50, at 6-7. As explained above, the uncontradicted summary-judgment evidence shows that Sowell's 25-yard walking restriction did not apply to his facility or housing assignments, and Dr. Vincent avers that no such restriction was medically necessary. Therefore, his claim against Captain Hill would lack merit. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (when a defending party establishes that a plaintiff has no cause of action, the defense generally inures also to the benefit of a similarly situated defendant).

Because Hill has not been served with process, Sowell's claims against him will be dismissed without prejudice for lack of personal jurisdiction. *See Gonzales v. Reilley*, 2023 WL 7443213, *4 (5th Cir. Nov. 9, 2023) (citing *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2022)). Sowell's motion for service on Hill (Dkt. 103) will be denied as moot. His motion for entry of default against Hill (Dkt. 116) will be denied. *See* FED. R. CIV. P. 55; *Lewis*, 236 F.3d at 767.

### E.  Other pending motions

Sowell's motion for production of documents includes requests for medical records, TDCJ policies relevant to his claims, and grievances (Dkt. 99). Many of these documents subsequently were produced in the summary-judgment briefing, as detailed above. To the extent not produced, Sowell's motion does not demonstrate that the requested documents would be relevant to the dispositive issues in this case. Therefore, his motion will be **denied as moot**.

Sowell's motion to enter land (Dkt. 101), which requests leave to measure and photograph distances between various locations on the Estelle Unit, will be **denied as moot**.

## IV.     CONCLUSION

For the reasons stated above the Court now **ORDERS** as follows:

1. Sowell's motion to oppose summary judgment (Dkt. 134), which the Court construes as a motion for leave to file an additional response, is **GRANTED**.

2. The defendants' motion for summary judgment (Dkt. 119) is **GRANTED**. All of Sowell's claims against Northcutt and TDCJ are **DISMISSED with prejudice**.

3. Sowell's claims against Hill are **DISMISSED without prejudice.** His motions for service on Hill (Dkt. 103) and for entry of default (Dkt. 116) are **DENIED as moot.**

4. Sowell's motion for production of documents (Dkt. 99) and motion to enter land (Dkt. 101) are **DENIED as moot**.

5. All other pending motions, if any, are **DENIED as moot**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on ____February 28_____, 2025.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE